The next case this morning is 521-0290 People v. Dewerff. Arguing for the defendant appellant is Kyle Smith. Arguing for the state is Ivan Taylor Jr. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note the clerk is permitted to record these proceedings. Good morning gentlemen. Mr. Smith on behalf of the Can you hear me all right? Yes. Okay, yes. Yes, I will. May it please the court, counsel. My name is Kyle Smith and I represent the appellant, Mr. Aaron Dewerff. Your honors, my client was charged for possessing certain firearm ammunition which was seized from an unoccupied residence on his property on September of 2019. As far as possession cases go, this is kind of an interesting one. And right off the bat, you can tell that there's going to be several problems for the state. First of all, the police, when searching the property, were unable to recover any guns, so he was charged with only possession of ammunition. As I mentioned, this was in an unoccupied house, so there's no evidence of actual or physical possession on behalf of the defendant. And to make matters worse, it turns out that their star witness, who's the defendant's girlfriend, happens to be a registered gun owner. So it obviously creates this inference that she could be the lawful owner of this ammunition. So at trial, the state tried to bring in, or did bring in, at least three more witnesses, including the father and two daughters, to testify about all the times in the past they had seen the defendant use or possess guns in the past year or so. This is other crimes evidence under Rule 404B, and we believe this is an abuse of the court's discretion to allow this evidence to come in. First and foremost, the state completely failed to give the required notice under Rule 404C, which is not a suggestion or a courtesy, but a substantive rule of evidence that states that the state is required to disclose this evidence either prior to trial or during trial if there's good cause shown. I do not believe that there was any good cause in this case, and I don't think that, I mean, the trial court certainly never made a finding of good cause. If it did, it certainly wasn't on the record. And I frankly just don't buy the state's argument that they didn't know that this evidence was coming in. They certainly knew or should have known as soon as they subpoenaed these witnesses from Louisiana that several of them testified, as they would later testify, had never even seen the defendant with ammunition. So turning now to the substance of this, or rather the evidence itself, so this is propensity evidence. So what the state's trying to do here is show that the defendant is someone who likes guns, is around guns, is okay with being around guns, to create the inference that if he does that on those past occasions, it's more likely that he possessed the ammunition on this occasion. The state tries to claim that this was related to intent or motive, but there's a couple of issues with that. First and foremost, most of the guns, with one exception which I'll address in a minute, most of the guns were not at all linked to the ammunition charged. There was no testimony about that these guns could, in fact, be the guns that would use the same ammunition. We know that on the hunting trip, he carried an uncertain handgun, supposedly, according to the father, which was contradicted by his own daughter or granddaughter, I suppose. And we know that, and none of this, all these occasions do nothing to show us that he had the intention to exercise immediate control over the evidence that was found in September. As I mentioned, there was one exception, which was the rifle, the 17 caliber rifle, which everything about it indicates is the exclusive owner property of Brandy, the girlfriend. She purchased it, she brought it with her when she went to Louisiana, and she had the intention of selling it, and as far as we know, she still has it to this day. The evidence of this rifle being in the car with the defendant, that's just another roundabout way of trying to prove that he was in possession of weapons, but that's not what he was charged with. He wasn't charged with having weapons in July of 2019. It was the ammunition that was found in September. As far as I believe, that's the only testimony that links this weapon in question to the defendant himself, so there's nothing to suggest that this was his property. Because this is other crimes evidence, this court is also required to do, as both parties agree, required to make a meaningful test, a meaningful balancing test of the probative value and the unfair prejudice to the defendant. The court made no findings of any sort. It simply said the motion is denied and moved on. This is partially a result of the state's failure to give notice prior to trial, but it's also on the trial court that to actually weigh the evidence and consider the unfair danger of unfair prejudice, whether the probative value outweighs it. I don't see how possessing a handgun in May has any bearing on whether or not you have the intent to exercise control over the ammunition that's found in September. There's a couple other reasons why we think that this evidence was unduly prejudicial to the defendant. It was certainly confusing for the jury, and that's evidenced not only by the state's repeated comments of saying that this was a actual charged offense, and it's also evidenced by the fact that the jury requested to see the statute during deliberation. They asked to see the statute that he was charged with because they needed clarification on what the charges were. They also referenced that they asked if he was okay to be around guns and ammo, but that's not the question. I don't know why they're asking questions about guns because that's not part of what they were charged with determining. I would also note there were no limiting instructions given about how to treat this evidence, about what this could be considered for and what it could not be considered for. And I think that this also impermissibly bolsters the credibility of the state's witnesses, who frankly needed some bolstering because the girlfriend's testimony is all over the place about whether... First she says, I've never had a FOIA card. And she says, well, he stole it from me. And then she says, well, he made me get it. And so she keeps changing her story about her involvement in all of this. And so it's highly questionable. And importantly, she is the only witness who can actually say this ammunition belongs to this defendant. Nobody else is able to make that statement. And so the father never lived with them. He never saw the ammunition. One of the daughters said she's never seen ammunition in the house. I would also add... So all these reasons are also evidence of why this was not harmless error because as you know, the state burden to show this error was harmless beyond a reasonable doubt. First of all, we know that the jury asked questions about it. So this is one of those rare cases where we can actually look and see what the jury was thinking and what the jury considered. And we know that, first of all, we know that they were thinking about the guns. Secondly, we know that they almost deadlocked in this case. And they said, we're at a standstill. It's 11 to one and we can't reach a decision. They go on to deliberate for another two and a half hours after that. So the notion that this was somehow, that there was overwhelming evidence of guilt or that this was an open and shut case, I think we can safely reject that because the jury certainly didn't view it that way. As I mentioned, I think the number of witnesses, there was four witnesses testifying about other crimes evidence. Two of them testified exclusively about it. And yet in terms of what the state's burden on appeal, or sorry, the state's burden to prove the defendant guilty, we have evidence from himself and three others that he was not even living there at the time. So as I said, these problems that the state has with at the outset, I don't think they're able to overcome all these issues. Yeah. So, well, if there are no further questions, I think that I would conclude my remarks so that's for those reasons we ask that you reverse this case, reverse and remand this case for a new trial. Thank you, Your Honor. Okay. Any questions, Justice Moore? No questions. All right. Justice Vaughn. Okay. Thank you, Mr. Smith. You'll have a few moments after Mr. Taylor concludes his remarks. Mr. Taylor, you're on mute, but you may proceed when you're ready. Thank you, Your Honors. Good morning. Good morning, counsel. Morning. The people request that this court affirm defendant's conviction for a lawful possession of a weapon by a felon. To start with, there was good cause shown for the lack of prior notice for the defendant regarding this other crime's evidence. And the court did make a finding that there was good cause shown. As prosecutors stated, it did not know soon enough prior to trial in order to inform the court. And when it did learn about it, it did mention it in his opening statements and informed the court that we just didn't know until now. Now that we know, we tend to use this information. And the court accepted that explanation as up to the court's discretion to do so. And it was not disclosed prior to trial? Correct. It was not disclosed prior to trial. And the court accepted the prosecutor's explanation indicating that good cause was shown for that failure to provide that prior notice. With regards to whether or not it was unduly prejudicial, the people were not trying to use this to indicate that the defendant was just a bad person with guns. The people were trying to demonstrate defendant's intent and motive for possessing the firearm ammunition. As prosecutors stated to the court, there's no reason to have ammunition if you don't have guns and you can't use a gun properly unless you have ammunition. In order to facilitate the people's ability to show that the defendant knowingly possessed this ammunition, it went to have the testimony of his ex-girlfriend, her daughters, to demonstrate that, yes, they have witnessed the defendant shooting guns on his property. And of course, in doing so, in any case that since he's been shooting these guns, he has this ammunition that was found in his home. Defendant argues that his home was not being used, but when the police did its search and took pictures of the evidence that was found, the home still had its appliances. It had clothing for both men and women. Defendant's clothes were found next to ammunition. It was found on his dresser. His ID was there. His mail was there. For supposedly being an uninhabited home, it was full of indications that someone was inhabiting that home. Even for this court were to consider that this evidence could not have come in, it was, any error was harmless beyond a reasonable doubt. Defendant argues that Brady's testimony was all over the place and that there were so many testifying about the firearms, but you actually look at the length of testimonies, it will show that the vast majority of the testimony came from the investigating officer and from Brandy, who were testifying about the ammunition that was in the home itself. It was only a relative handful of pages that are about the firearms that was witnessed by Kevin Talley and Brandy's testimony. The people will still contend that the testimony from Kevin Talley does not fall under 404 as Kevin Talley only witnessed the defendant holding a handgun in Louisiana, which would not have been a crime in that state for the defendant to have a handgun. And for these reasons, as well as the reason the people believe that the testimony of the defendant having, using and having handguns was properly admitted as under crimes evidence and there was good cause shown as to the people's lack of prior notice. Moving to defendant's other claim regarding the ownership and possession was forfeited. It was no ejection. It was never put in a post-trial motion. And further, there was never a plain error argument in the opening brief by defendant. This court should not consider any issue regarding that. However, people recognize that forfeiture is a limitation on the parties. With regards to that, defendant is mistaken that there is a legal distinction between ownership and possession. In a recent decision by the second district and people of the Serato 223 ILAP 2D 220100, paragraph 22 starts with the second district detailing the long history of the court's finding a distinction between ownership and possession. Ownership can help indicate someone possesses an item of contraband. Ownership is not required for someone to possess contraband. Furthermore, another individual can own an item and it can still be possessed by someone else. That's where you get joint possession. With regards to defendant's claim that it was Brandy's ammunition in the home because she had a Ford car, thus she was the one who had to own the items, that does not absolve a defendant of possessing the items. And the voir dire questions by the prosecutor were to indicate to ensure that the jury knows how to understand Illinois law that to the circumstantial evidence of voir dire questions, the people will maintain arguments in its brief that the prosecutor was merely trying to ensure that the jury members, the potential jury members will follow Illinois law and would be able to convict on circumstantial evidence which can facilitate conviction if proven beyond reasonable doubt. Are there any questions, your honors? Justice Moore? No questions. Justice Vaughn? No questions. Thank you, your honors. The people just ask the court to affirm defendant's conviction for lawful possession of a firearm. Thank you. Thank you, Mr. Taylor. Mr. Smith? Good morning, your honors. I'd like to quickly address some of the issues that the state has raised with respect to our second issue on appeal. I won't touch the merits of that, and I'll rest in the brief for that, but I would just like to clarify a few things. First of all, it's well settled that the defendant can raise plain error review in a reply brief. That's black letter law. It's the state's argument to raise or forfeit, and we've adequately raised that, so I don't think that's an issue. Secondly, I'd note that the Serrato case that he mentioned, I'm not familiar with, and unless I'm mistaken, I don't believe that was cited in the briefs. If I'm mistaken about that, I do apologize, but I'm not familiar with that case. And finally, I was just going to say that our argument is not about whether or not it's true that ownership and possession are two different things under law. I think that's a perfectly fine thing to say. The problem is this was introduced by the state in voir dire. This was introduced when selecting a jury. This was introduced before you even got into the case. This is not the time to make those kinds of arguments. Most of the things that the state said would be perfectly fine if it was given an opening statement or a closing argument. This is not the type of stuff that should belong to that. Is it your argument that it's improper indoctrination? Yes, that is our argument, and I guess one other note about that, indoctrination is a continuing thing. You don't just do it once, so I think the state tries to slice it up into individual comments and treat them all like they're individual errors, but this is a pattern of indoctrination. But yes, especially the arguments made during both that and the circumstantial evidence arguments, which were specifically objected to, so plain our review would not even apply to those who are also erroneous. Returning to some of the state's arguments about the first issue, unless if there are any other questions about the second issue, I don't know how the state can claim that there was good cause in this. The claim that they didn't know what the state was going to testify, what the witnesses were going to testify, is frankly absurd. They had this information as early as whenever they subpoenaed these witnesses from out of state, they knew in their trial. They could have said, they could have gave the defense attorney a notice, apologized, raised it to the court, and maybe this whole thing might not have been an issue. They didn't do any of that, so I think it's incredibly disingenuous to, even if that is true, to reveal it in the opening statement like that and blindside the defendant when they certainly knew, and their whether or not the state actually knew. As to the one clarification about the pictures of the defendant's home, about whether or not it was uninhabited, I should clarify, we don't believe that the home was uninhabited or that no one was living there. There was nobody there when the search was carried out, that much is true. My understanding is that the girlfriend, and I don't he was living on his, he had some other, I believe it was a shop was what they referred to it, and he had been, was temporarily out of his house, so it wasn't that, you know, this was an abandoned house or anything, but the defendant wasn't living there at this time. Finally, the argument about Louisiana, as I addressed in our reply brief, whatever Louisiana says is allowed or is not allowed. This is a federal crime, so that would apply anywhere that the person with a felony is found to be in possession of guns or ammo. Also, the crime, you know, we call this other kinds of evidence, that's not required. It can be, you know, other crimes or bad acts, and I think there are plenty of instances where something might be, you know, technically you can make an argument that it's legal, but it certainly wasn't treated that way. The state never, the state never, you know, the jury was never told this is okay to do in Louisiana, however we're showing it for X, Y, and Z. No, the state treated it from start to finish as if this was another crime. This was another instance of the defendant committing this crime. And finally, the harmlessness error argument, you simply, you can't just rely on the length of testimony to prove how much or how important this case was. The first day was the state going step by step, showing all the pictures, and so that's going to take up much more testimony. The entire second day was devoted to these witnesses, and as I mentioned, these are the only witnesses that the state or that the jury asked about, rather not the only witnesses, but the notes that the jury asked was only about the possession of guns and ammunition. I see that my time has expired, so unless there are any further questions, I respectfully ask. No other questions. Justice Vaughn? No questions. All right. Thank you, Mr. Smith, for your arguments. Mr. Taylor, this matter will be taken under advisement. We'll issue an order in due course.